**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DANIEL WADE HAILS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:17-cv-00259-KD-N** |
| | ) | |
| **TIMOTHY TRENT DENNIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court on defendant Timothy Trent Dennis' motion for summary judgment, memorandum in support, and relevant exhibits. (Docs. 82, 83, & 84). Also before the Court are plaintiff Daniel Wade Hails' response in opposition (Doc. 87) and Dennis' reply. (Doc. 88). Hails' amended complaint, brought pursuant to 42 U.S.C. § 1983, alleges three claims: (1) false arrest, (2) false imprisonment, and (3) malicious prosecution. As the Court will explain, Dennis' motion is due to be granted with respect to Hails' malicious prosecution claim and denied with respect to Hails' false arrest and false imprisonment claims.

**I.     PROCEDURAL BACKGROUND**

Hails' original complaint, filed on June 9, 2017, included numerous defendants. (Doc. 1). Each defendant filed a motion to dismiss. (Docs. 27 & 29). United States Magistrate Judge Katherine P. Nelson granted each defendants' motion to dismiss, except Dennis'. (Docs. 57 & 58). This Court adopted Judge Nelson's Report and Recommendation. (Doc. 62).

As a result, the sole remaining defendant is Officer Dennis, a Silverhill Police Department

Officer. Hails amended complaint alleges that Dennis violated his Fourth Amendment rights. (Doc.

63 (Amended Complaint) at ¶ 2).[1]

## II.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a). Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. Rule 56(c).

---

[1] Because Hails proceeds *pro se*, the Court is mindful that "*[p]ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). See also Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168 (11th Cir. 2014) (construing *pro se* plaintiff's pleadings liberally).

Dennis, as the party seeking summary judgment, bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal quotation marks and citations omitted) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255).

To resolve a summary judgment motion based on qualified immunity, the Eleventh Circuit has stated courts should

> approach the facts from the plaintiff's perspective because "[t]he issues appealed here concern not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law." Sheth v. Webster, 145 F.3d 1231, 1236 (11th Cir. 1998). As this Court has repeatedly stressed, the "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000). Nevertheless, for summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the plaintiff. See Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002).

McCullough v. Antolini, 559 F.3d 1201, 1202 (11th Cir. 2009) (quoting Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002)). "In order to overcome summary judgment because of qualified immunity, 'the facts in dispute must raise a genuine issue of fact material to the determination of the

underlying issue.'" Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012) (quoting McCullough, 559 F.3d at 1205).

### III.   FACTS

Hails lives outside Silverhill, Alabama, a sparsely populated area of Baldwin County. (Doc. 85-1 at 23).[2] Hails lives just barely within Silverhill Police Department's jurisdiction. (Doc. 85-1 at 6). Dozens of trees and a large live oak tree populate his front yard. (Doc. 85-1 at 23). His home is positioned "almost all the way in the back of the property." (Doc. 85-1 at 5).

Hails' front porch is located approximately 180 feet from the gate on his property. (Doc. 85-1 at 15). The fence at the front of the property is approximately 30 to 40 feet from the pavement, (Doc. 85-1 at 27), where the gate is located. (Doc. 85-3 at 2).

Hails owns many firearms and target practices often. (Doc. 85-1 at 4; id. at 7). Hails "always" shoots "going forward." (Doc. 85-1 at 5). Specifically, he shoots towards a milk jug positioned in front of a "great big dead pine stump" that is located in front of his home. (Doc. 85-1 at 5).[3]

Hails is not the only person in the vicinity of his home who enjoys target practicing. He testified that gunfire occurs around his home daily and nightly, and that hearing gunshots is "[e]xtremely common." (Doc. 85-1 at 6).

The events giving rise to Hails' lawsuit occurred on June 9, 2015. (Doc. 85-1 at 8). On that evening, Hails fired two rounds. (Doc. 85-1 at 8). Dennis responded to Hails' residence twice. (Doc. 85-3 at ¶ 4 & 5). He first responded at 8:30 p.m., after receiving a report of a man firing shots at Hails' residence. (Doc. 85-3 at ¶ 3). He did not make contact with Hails on his first visit. (Doc. 85-3 at ¶ 4).

---

[2] All citations to the record reflect the document and page number generated by CM/ECF.

[3] Dennis relayed that the milk jug sat "on top of a stump" but Hails testified, and the photograph he offered depicts, the milk jug actually sits in front of the stump, on the side facing Hails' house. (Doc. 87 at 1; Doc. 85-1 at 5-6).

In fact, Hails did not know Dennis first responded at 8:30 that evening. (Doc. 85-1 at 10). Dennis responded to Hails' residence again at 10:30 p.m. that same night after another report of shots being fired. (Doc. 85-3 at ¶ 5).[4] This time, Officer Dennis approached Hails' gate, which was both closed and locked. (Doc. 85-3 at ¶ 6).

At this point the parties dispute what occurred. Dennis averred that through the privacy fence, he saw Hails sitting on his front porch. (Doc. 85-3 at ¶ 6). However, Hails claims that the closed gate, numerous mature trees and underbrush, and two grills located on his porch would have prevented Dennis from seeing him. Hails claims Dennis could not possibly have seen Hails on his front porch. (Doc. 87 at 1). In support of this claim, Hails provided the Court with photographs depicting the trees and underbrush and distance. A photograph Hails submitted, which he states depicts the view of his porch from inside the front gate, is below.



(Doc. 52-2 (Exhibit D)).

---

[4] Officer Dennis completed an Incident/Officer Report for these visits. (See Doc. 85-3 at 5-6).

Officer Dennis averred that he then activated his emergency lights and blew his air horn. (Doc. 85-3 at ¶ 7). He also climbed the fence and identified himself as a police officer, informing Hails that he needed to speak to him. (Id.)

According to Dennis, Hails "waved at [him] in acknowledgement" and then aimed a rifle at Dennis and fired a shot at him. (Id.) This fact is disputed by Hails. Hails testified that he fired two rounds that evening; once at 8:30 p.m. and once at 9:30 p.m. (Doc. 85-1 at 8).

Dennis retreated and called for assistance. (Doc. 85-3 at ¶ 8). The Baldwin County Sherriff's Department SWAT team responded to the scene. (Id. at ¶ 8 & 9). The SWAT team initially tried coaxing Hails out using its intercom system. (Id. at ¶ 9). But this proved unsuccessful. (Id.) So the SWAT team breached Hails' gate and proceeded to Hails' front porch. (Id.) There, the team again tried to communicate with Hails "through emergency lights and sirens." (Id.). This attempt similarly failed. (Id.). The SWAT team, after a period of time, decided to use tear gas. (Id. at ¶ 10).[5] After deploying tear gas a second time, Hails exited the home. (Id.)

Law enforcement took Hails into custody after he exited. (Doc. 85-1 at 18; Doc. 85-3 at ¶ 10). Hails remained in the Baldwin County jail for approximately four months. (Doc. 85-1 at 18-19). Dennis obtained a warrant for Hails' arrest. (Doc. 85-4). He was charged with attempted murder and later an indictment was returned. (Id.). More than one year later, Baldwin County Circuit Judge Jody W. Bishop dismissed the charges against Hails, for want of prosecution. (Doc. 85-8).

---

[5] According to Hails' account (which, from his deposition transcript does not necessarily contradict Officer Dennis' account of the SWAT team's conduct, but instead offers a different perspective, See S.D. Ala. Civ. L.R. 56(d) ("Effect of Uncontroverted Facts. The Court will deem uncontroverted material facts to be admitted solely for the purpose of deciding the motion for summary judgment.")), he heard his name called. He got up and went to the door, seeing lots of police lights and an armored vehicle. Hails panicked and took his dog to his bedroom. Then he went outside with his hands raised. The police "bark[ed] commands" at Hails. (Doc. 85-1 at 12).

## IV. ANALYSIS

### a. Qualified Immunity

Dennis contends that he is entitled to qualified immunity as to all claims. (Doc. 84 at 7). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Brown v. City of Huntsville, 608 F.3d 724, 733 (11th Cir. 2010) (quoting Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)). The defense of qualified immunity is predicated on a showing by the defendant police officer that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d at 1194. "To determine whether an official was engaged in a discretionary function, [courts] consider whether the acts the official undertook are of a type that fell within the employee's job responsibilities." Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004). See also Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004) ("Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize. . . [and] we look to the general nature of the defendant's action . . . .").

If Dennis establishes that he was acting within the scope of this authority at the time he allegedly committed wrongful acts, the burden shifts to Hails to show that Dennis is not entitled to qualified immunity. Lee, 284 F.3d at 1194. To meet his burden, Hails must show two things. First, he must show that, "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right." Lee, 284 F.3d at 1194 (quoting Saucier v. Katz, 533 U.S. 194, 121 (2001)). Second, "[i]f [Hails shows] a constitutional right would have been

violated under [his] version of the facts, the court must then determine 'whether the right was clearly established.'" Id.

The Court finds ample evidence that Dennis was performing a legitimate job-related function when he was dispatched to Hails' home twice on the night of June 9, 2015. And specifically, the Court concludes that Hails performed a legitimate job-related function when he was dispatched to Hails' home for the second time. Dennis is a sworn Silverhill Police Department officer. Being dispatched to locations after a report of gunfire by concerned neighbors clearly falls within a police officer's power to conduct his or her duties. Making an arrest is also an official responsibility of a police official.[6] As a result, Hails must show (1) Dennis violated his constitutional rights and (2) that the violated rights were clearly established at the time of his arrest. Lee, 284 F.3d at 1194.

Hails' two-page response leaves absent any argument as to whether Dennis committed a constitutional violation and whether the right was clearly established. Nevertheless, Eleventh Circuit precedent holds that "the law [is] clearly established that an arrest without probable cause to believe a crime ha[s] been committed violate[s] the Fourth Amendment." Von Stein, 904 F.2d at 579.

The right to be free from false imprisonment was also clearly established on June 9, 2015. Campbell v. Johnson, 586 F.3d 835, 840 (11th Cir. 2009) ("The Fourteenth Amendment Due Process Clause includes the 'right to be free from continued detention after it was or should have been known that the detainee was entitled to release.'" (quoting Cannon v. Macon Cty., 1 F.3d 1558, 1563 (11th Cir. 1993), opinion modified on reh'g, 15 F.3d 1022 (11th Cir. 1994))).

---

[6] See Crosby v. Monroe Cty., 394 F.3d 1328, 1332 (11th Cir. 2004) ("[M]aking an arrest is within the official responsibilities of a sheriff's deputy[.]").

### b. Arguable Probable Cause

Dennis argues that he "must only establish arguable probable cause to warrant dismissal of [Hails'] claims." (Doc. 88 at 3). Probable cause constitutes an essential element of each of Hails' three claims (false arrest, malicious prosecution, and false imprisonment).[7] As a result, should Hails fail to "produce admissible evidence sufficient to persuade a reasonable juror that [Dennis] did *not* have arguable probable cause to arrest him for [the crime of attempted murder], then [Dennis] is entitled to qualified immunity from [Hails'] lawsuit and, in turn, to summary judgment." Pruitt, 625 F. App'x at 376. The dispositive question, therefore, is whether arguable probable cause existed to arrest Hails.

"[A]rguable probable cause is all that is needed to establish the qualified immunity defense when probable cause is an essential element of the constitutional claim." Pruitt v. Gillespie, 625 F. App'x 374, 376 (11th Cir. 2015) (unpublished). Arguable probable cause exists where reasonable officers in the same circumstances and with the same knowledge as the officer could have believed that probable cause existed. Brown, 608 F.3d at 734. It "depends on the elements of the alleged crime and the operative fact pattern. Showing arguable probable cause does not, however, require proving every element of a crime." Id. at 735 (internal citations omitted). "[W]hat counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." Jones v. Cannon, 174 F.3d 1271, 1283 (11th Cir. 1999). "The standard is an

---

[7] "The district court correctly recognized that probable cause is an essential element of both Fourth Amendment false arrest and malicious prosecution claims." Pruitt v. Gillespie, 625 F. App'x 374, 376 (11th Cir. 2015). "[A] claim of false imprisonment, absent misidentification, depends on an absence of probable cause[.]" Case v. Eslinger, 555 F.3d 1317, 1330 (11th Cir. 2009).

objective one and does not include an inquiry in to the officer's subjective intent or beliefs." Brown, 608 F.3d at 735.

Hails was arrested and charged with attempted murder. Ala. Code § 13A-4-2. "The elements of the crime of attempted murder are intent to kill and an overt act towards commission of that act." Mills v. State, 144 So. 3d 499, 506 (Ala. Crim. App. 2013) (quoting Bradford v. State, 734 So. 2d 364, 369 (Ala. Crim. App. 1999)).

> Attempted murder is a specific intent crime. An attempt to commit murder requires the perpetrator to act with the specific intent to commit murder. A general felonious intent is not sufficient. To establish a prima facie case of attempted murder, the State must present evidence of the accused's specific intent to kill, and of some overt act in part execution of the intent to commit the crime which falls short of the completed crime; the difference between attempt and commission being that the act or step fails to produce the result intended.

Id. (quoting Minshew v. State, 594 So. 2d 703, 704 (Ala. Crim. App. 1991)) (internal citations, quotation marks, and ellipses omitted).

### c. Factual Disputes

Hails repeatedly accuses Dennis of untruthfulness. (See Doc. 87 at 1 (accusing Dennis of fabricating an incident, lying to the magistrate judge, lying to other officers, and lying under oath)). Yet Hails does not support many of his assertions with evidence. The relevant Rule of Civil Procedure, this Court's local rules, and precedent require more.[8]

First, Hails disputes Dennis' assertion that Hails waived at him. (Doc. 5-3 at ¶ 7; Doc. 87 at 9). However, Hails does not make this dispute in an evidentiary form. Instead, he merely argues these

---

[8] See e.g., Kernel Records Oy v. Mosley, 694 F.3d 1294, 1309 (11th Cir. 2012) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . ."); FED. R. CIV. P. 56 ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ."); S.D. ALA. CIV. L.R. 56(b) ("The non-movant's brief must include: (1) all facts relied upon, each supported by a specific, pinpoint citation to the record; (2) all challenges to the movant's asserted facts; . . . .").

points in his motion.  See Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999) ("The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."). Second, Dennis averred that he was able to see Hails sitting on his porch. (Doc. 85-3 at ¶ 6). Hails claims is it impossible to see his porch (and anyone sitting on it) from the place where Dennis was located. (Doc. 87 at 2).[9]

Third, and most importantly, Dennis averred that Hails shot at him. (Doc. 85-3 at ¶ 7). Hails, in his complaint – but not his response to Dennis' motion for summary judgment – argues that "[t]his is a false statement." (Doc. 63 at ¶ 4). The evidence regarding Hails' alleged shootings is included in his deposition testimony. The Court possesses only selected portions of that deposition testimony. Hails testified that he fired only two rounds that evening; once at approximately 8:30 p.m. and once at approximately 9:30 p.m. (Doc. 85-1 at 8) When viewed in the light most favorable to Hails, this contradicts Dennis' statement in his affidavit that Hails fired a shot at him at approximately 10:30 p.m., the time of Dennis' second dispatch to Hails' home.

### d. Hails' Claims

---

[9] Hails demonstrated this in multiple ways. He captured Dennis' likely view from the gate in video, taken at night. (Doc. 52, videos). He also captured what he believed would be Dennis' view in a photograph, taken in daytime. (Doc. 52-3). The photograph is included below.



*False arrest.* "[A]n arrest without probable cause to believe a crime had been committed violate[s] the Fourth Amendment." Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990).

According to Hails' account, the last time he fired a round was 9:30 p.m. (Doc. 85-1 at 8). Officer Dennis did not arrive until after 10:30 p.m. Believing Hails' account, as is required, there was not an overt act towards commission of the crime of attempted murder. The genuine factual dispute is material because its resolution informs whether Dennis had arguable probable cause.

Other courts, facing factual disputes over the existence of arguable probable cause, have denied summary judgment. See e.g., Warren v. Scott, 2015 WL 11199160, at *2 (N.D. Ga. Feb. 23, 2015) ("[T]he United States Court of Appeals for the Eleventh Circuit has also held that the 'question whether arguable probable cause for the arrest existed is aptly suited for a jury' where questions of fact exist which are determinative of the existence of arguable probable cause." (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1233 (11th Cir. 2004))); Barnes v. Dekalb Cty., Ga., 898 F. Supp. 2d 1317, 1322–23 (N.D. Ga. 2012) ("The disputed factual issues in this case preclude a determination that arguable probable cause existed, as a matter of law."); Franco v. Caldwell, 2011 WL 2262481, at *6 (S.D. Fla. June 6, 2011) ("Looking at the totality of the circumstances in the light most favorable to Plaintiff, the Court cannot conclude that probable cause existed for Plaintiffs arrest, because there is an issue of disputed fact as to whether Plaintiff received a trespass warning prior to his arrest.").

Dennis responds that "[e]ven if Dennis mistakenly concluded that probable cause was present, if that mistake was reasonable, he cannot be held personally liable." (Doc. 88 at 3 (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991)). Second, Dennis argues that the grand jury's subsequent indictment constitutes prima facie evidence of probable cause. (Id. at 4 (citing Riley v. City of Montgomery, Ala., 104 F.3d 1247 (11th Cir. 1997)). Neither argument withstands closer inspection.

First, <u>Hunter</u> would support qualified immunity if Dennis' arrest of Hails was reasonable, even if mistaken. In other words, if Dennis' believed he heard or saw gunfire from Hails, even if Hails did not fire, Dennis would be entitled to qualified immunity. However, Dennis' credibility is still the issue. Only a factfinder, not the undersigned when considering a motion for summary judgment, may determine credibility.

Second, Dennis' reliance on <u>Riley</u> is unavailing. <u>Riley</u> concerned a state law malicious prosecution claim. The Court considers <u>Riley</u> applicable to the below-mentioned malicious prosecution claim, but not to the instant false arrest claim.[10]

The Eleventh Circuit has held that arguable probable cause need not be limited to the crime ultimately charged. As the Eleventh Circuit instructed: "If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply." <u>Brown</u>, 608 F.3d at 735 (citing <u>Skop v. City of Atlanta, GA</u>, 485 F.3d 1130, 1138 (11th Cir. 2007)). Dennis did not present the Court with this argument, and the Court will not independently determine whether Hails' conduct may have constituted arguable probable cause for other crimes. <u>See</u> <u>Resolution Tr. Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments . . . .") (internal citation omitted).

---

[10] The Court's independent review of Alabama Supreme Court cases – from which <u>Riley</u> follows – leads the Court to conclude that its holding is circumscribed to malicious prosecution claims. <u>Alabama Power Co. v. Neighbors</u>, 402 So. 2d 958, 967 (Ala. 1981) ("*In malicious prosecution* the general rule is that the finding of an indictment by a grand jury against one charged with crime is prima facie evidence of the existence of probable cause . . . ." (quoting <u>Union Indem. Co. v. Webster</u>, 118 So. 794, 803 (Ala. 1928) (emphasis added)).

Questions of fact, including whether Hails fired a shot at Dennis during his second dispatch to the home, remain. As a result, Dennis' motion for summary judgment with respect to false arrest is **DENIED**.

*False imprisonment.*

> A false imprisonment claim under section 1983 is based on the protection of the Fourteenth Amendment against deprivations of liberty without due process of law. Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest.

Case v. Eslinger, 555 F.3d 1317, 1330 (11th Cir. 2009) (quoting Ortega v. Christian, 85 F.3d 1521, 1526 (11th Cir. 1996)). "A § 1983 claim of false imprisonment requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment." Campbell v. Johnson, 586 F.3d 835, 840 (11th Cir. 2009). "The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness of confinement." Id. To establish a due process violation, Hails must demonstrate that Dennis acted with deliberate indifference, that is Dennis "had subjective knowledge of a risk of serious harm and disregarded that risk by actions beyond mere negligence." Id.

Dennis' sole argument with respect to this claim is that Dennis had arguable probable cause to arrest Hails. However, as discussed above, a question of fact precludes summary judgment because Hails' version of events does not include an overt act in furtherance of a murder. As a result, Dennis' motion with respect to false imprisonment is **DENIED**.

*Malicious Prosecution.* To establish a Section 1983 malicious prosecution claim, "a plaintiff must prove: (1) the elements of the common law tort of malicious prosecution and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." Kingsland, 382 F.3d at 1234–35. In a § 1983 malicious-prosecution action, plaintiff's injuries "may include those associated with the prosecution," but regardless, they must be caused by the unlawful seizure. Whiting v. Traylor, 85

F.3d 581, 586 (11th Cir. 1996). The common law tort of malicious prosecution elements include: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.

"A grand-jury indictment is prima-facie evidence of probable cause and serves as a defense to an action for malicious prosecution unless there is evidence that the indictment was induced by fraud, subornation, suppression of testimony, or other like misconduct on the part of the party seeking the indictment." Lee v. United States, 2007 WL 2774342, at *2 (M.D. Ala. Sept. 24, 2007) (citing Riley v. City of Montgomery, 104 F.3d 1247, 1254 (11th Cir. 1997)).

Here, a grand jury indicted Hails for attempted murder. (Doc. 85-7 (Indictment)). While the court could surmise that Dennis' testimony was used to procure the indictment, no such evidence has been presented.[11] Thus, there is no evidentiary basis to reject the indictment as prima facie evidence of probable cause for purposes of the malicious prosecution claim. As a result, Dennis' motion for summary judgment with respect to the malicious prosecution claim is **GRANTED**.

## V.    CONCLUSION

For the foregoing reasons, Dennis' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

**Done** this 21st day of November 2018.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[11] Hails *alleges* that Dennis fraudulently and maliciously fabricated the false incident/arrest warrant. (Doc. 63 at 2, ¶ 5). This does not constitute evidence.